BOYD et al. v. KEYSTONE DRILLER CO.
(No. 9152.)

Court of Civil Appeals of Texas. Galveston.
April 19, 1928.

Rehearing Denied May 10, 1928.

1. Sales ⬾342—Vendor's right to recover price depends on substantial performance of his contract.

Vendor's right of action for purchase price depends on substantial performance of his contract.

2. Sales ⬾150(1)—Vendor cannot recover price without actual or constructive delivery.

Vendor cannot recover price of thing sold, unless there has been a delivery, actual or constructive.

3. Sales ⬾177, 179(3) — Purchaser may refuse to take goods because of noncompliance with shipping instructions, but, having taken them personally or by authorized agent, is liable for price.

Where seller fails to comply with shipping instructions, purchaser can refuse to take thing purchased on arrival thereof, but, having taken it in person or by authorized agent before payment and appropriated it to his own use, is liable for price; seller's modification of terms of buyer's order being counteroffer to sell under modified terms.

4. Appeal and error ⬾846(5)—Judgment, supported on any theory by evidence in statement of facts, must be affirmed, in absence of fact findings or legal conclusions.

In absence of findings of fact or conclusions of law in record of cause tried before court without jury, judgment must be affirmed, if evidence disclosed by statement of facts supports it on any theory.

5. Principal and agent ⬾23(5), 123(3)—Evidence held to warrant findings that certain person was buyer's agent, authorized to and actually receiving implements purchased as agent.

In action for price of implements sold, evidence held to warrant findings, supporting judgment for plaintiff, that certain person was defendant's agent, authorized to receive implements without first paying therefor, and did receive them and use them in carrying out defendant's contract with city.

6. Appeal and error ⬾931(4)—Appellate court may presume that necessary fact findings, warranted by evidence, were made.

On appeal from judgment for plaintiff in action for price of implements sold, Court of Civil Appeals may presume that necessary findings of fact, warranted by evidence, that certain person was defendant's agent with authority to receive implements without paying therefor and did receive them as such agent, were made.

7. Appeal and error ⬾1011(1)—Conflicting evidence as to whether amount sued for was net price of article sold made issue for trial judge, whose finding appellate court cannot disturb.

Where evidence as to whether amount sued for by seller was net price of article sold after deduction of agreed discount off list price was conflicting, determination of issue was for trial judge, with whose finding Court of Civil Appeals cannot interfere.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by the Keystone Driller Company against Sam Boyd and others. Judgment for plaintiff, and defendants Boyd and another appeal. Affirmed.

H. E. Kleinecke, Jr., and McDonald & Wayman, all of Galveston, for appellants.

Williams, Neethe & Williams, of Galveston, for appellee.

LANE, J. This suit was brought by the Keystone Driller Company against Sam Boyd, M. C. Abrahams, and H. J. Wilson to recover the purchase price of a pump head and other implements which the plaintiff alleges it sold and delivered to the defendants.

The plaintiff alleged, substantially, that, at the time of the purchase and delivery of said pump head and implements, the defendants were partners, doing business under the firm name of Gulf Machinery & Ship Supply Company; that defendants under such firm name,

acting through H. J. Wilson, ordered and requested plaintiff to sell and ship to said firm at San Juan, Tex., said pump head and implements, at a price of $2,308; that in ordering the goods mentioned defendants requested plaintiff to draw on them for the net purchase price; that plaintiff promptly acknowledged receipt of said order and its acceptance thereof; that it shipped the goods ordered from Joplin, Mo., to San Juan, Tex.; and that, acting through H. J. Wilson, the defendants received all of said goods at San Juan. Plaintiff alleged in the alternative that, if it be mistaken in its allegation that all of the defendants composed the partnership, then and in that event it alleges that Sam Boyd and M. C. Abrahams composed such partnership, and that Wilson was their duly authorized agent, with authority to make in their behalf the contract of purchase, and that Sam Boyd and M. C. Abrahams, with full knowledge of said contract and all the terms thereof, so made by Wilson in their behalf, approved, adopted, and ratified the same.

Defendants Boyd and Abrahams denied under oath that Wilson was at any time a member of the partnership known as Gulf Machinery & Ship Supply Company. They denied that Wilson had authority to execute any order for merchandise or other goods shipped by the plaintiff and thereby bind the defendants to pay for same. They made general denial and pleaded the two years' statute of limitation.

They alleged "that at or about the time mentioned in plaintiff's petition they did order from plaintiff certain machinery similar to that described in plaintiff's petition," but that when such order was made they directed plaintiff to ship only upon a shipper's order, bill of lading attached to a sight draft for the purchase price thereof; that plaintiff understood and agreed it would not make shipments for the account of defendants to San Juan or other Texas valley points except in the manner stated; that neither of them, Boyd nor Abrahams, nor any one by them authorized, received the machinery described and referred to in plaintiff's petition; that neither they nor either of them ever received the benefit of the machinery so described, nor did they use or appropriate it. They denied that Wilson was their agent to receive or accept machinery.

The case was tried before the court without a jury, resulting in a judgment for the plaintiff against defendants for the sum of $3,062.56; of this sum $2,308 was for the purchase price of the merchandise described in plaintiff's petition as a "pump head."

Boyd and Abrahams have appealed.

As cause for reversal of the judgment, appellants contend (1) that the undisputed evidence shows that the pump head for which appellee recovered the sum of $2,308 was by the direction of defendants to be shipped C.

O. D. or sight draft with shipper's order bill of lading attached for the purchase price; that plaintiff accepted the order on such conditions; that said pump head was not shipped upon said conditions, but was shipped open; that it was never received by defendants, nor by one having authority to receive it for them; that under such showing plaintiff was not entitled to a recovery for the price of the pump head, as against appellants; and (2) that the evidence was insufficient to show that defendant Wilson had authority to receive the pump head without paying for it, or that he had authority to act for defendants Boyd and Abrahams in any other capacity than that of salesman on commission.

We think it should be conceded that appellee understood that the appellants had instructed it to ship the pump head C. O. D. or sight draft with shipper's order bill of lading attached for the purchase price thereof, and that such instructions were disobeyed. Appellee wrote appellant a letter relative to said shipment, as follows:

"In this transaction, we admit your having instructed us to make shipment to you at San Juan, Tex., and draw through the Pharr State Bank at Pharr, Tex., for the amount; however, we did not; our shipping department, having the information your account as being O. K. for open shipment, did not forward this material shippers order."

[1-3] It seems to be settled that the vendor's right of action depends upon the substantial performance of his contract, and he cannot recover the price of the thing sold unless there has been a delivery, actual or constructive, and that, where the vendor does not comply with shipping instructions and there is no delivery, no recovery could be had for the purchase price of the thing sold. 35 Cyc. 531; Leitner v. Cooper, 9 Ga. 394, 71 S. E. 596; Watson v. Patrick (Tex. Civ. App.) 174 S. W. 632; Adams v. Pickrel Co. (Mo. App.) 232 S. W. 271; Eliason v. Henshaw, 4 Wheat. 225, 4 L. Ed. 556.

But where the purchaser takes the thing shipped, either in person or by his authorized agent, prior to payment being made therefor, and appropriates it to his own use, he can be held liable for the purchase price, notwithstanding the fact that his shipping instructions were disobeyed. If the seller has failed to comply with shipping instructions, the purchaser can, upon arrival of the thing purchased, refuse to take it on the grounds that the terms of his offer have not been met; but he cannot take the goods when shipped and then refuse to pay therefor upon the grounds that the seller failed to meet the terms of the original offer of purchase. In other words, if, in tendering the goods ordered, the seller has modified the terms of the buyer's order, such modification is a counter offer to sell under the modified terms, and if the buy-

er accepts the goods he must be held to the terms of the seller's counteroffer.

What we have said brings us to a decision of the question as to whether or not appellants or their authorized agents received the goods shipped under the terms of the shipper or seller.

[4] As already stated, this cause was tried before the court without a jury. There are no findings of fact or conclusions of law in the record, and, in the absence of such findings and conclusions, the judgment of the trial court must be affirmed if the evidence as disclosed by the statement of facts supports it on any theory of the case. Austin, Commissioner of Banking v. Nieman (Tex. Civ. App.) 3 S. W. (2d) 128; Daniel v. De Ortiz (Tex. Civ. App.) 140 S. W. 486; Broussard v. Cruse (Tex. Civ. App.) 154 S. W. 347.

The question then arises, Does the evidence support the judgment upon any theory of the case?

[5, 6] Since we have found that the undisputed evidence shows that appellants ordered the machinery to be shipped C. O. D. or to shipper's order bill of lading attached, and that the machinery was shipped open in disobedience to said order, the only theory upon which the judgment can be sustained is that defendant H. J. Wilson was in fact the agent of appellants with authority to receive and make use of the machinery for appellants, and that he did receive the same for appellants.

It is shown that Sam Boyd, M. C. Abrahams, and W. P. Cunningham were in 1921 and 1922 partners, doing business under the firm name of Gulf Machinery & Ship Supply Company; that under such name they had a contract by the terms of which they were made the agents of appellee, the Keystone Driller Company, to handle the implements and machinery which the latter company had for sale in a certain designated territory, which included the city of San Juan, situated in what is known as the "Texas Valley."

J. H. Brady, an agent for appellee, testified, substantially, that prior to the 18th day of April, 1923, when on his way to the valley, he met Mr. Abrahams in Galveston; that Mr. Boyd was at such time out of town; that Mr. Abrahams told him that Cunningham, the *manager* of the Gulf Machinery & Ship Supply Company, was no longer with the firm, and that Mr. H. J. Wilson had taken his place; that he told witness that Wilson had a job of furnishing the city of San Juan with machinery for waterworks system, and that he, Abrahams, wanted witness to meet Wilson as he wanted Wilson to see him in regard to the job; that witness went to the valley, saw and talked to Wilson about the job; that Wilson inquired of him as to what size pump head he should order for the job; that on the 18th day of April, 1923, after his talk with Wilson, the Keystone Driller Company received an order from the "Gulf Machinery & Ship Supply Company," signed by Wilson as manager, for a No. 33 pump head for the city of San Juan.

Such order, omitting parts immaterial to the issues involved, reads as follows:

"Gulf Machinery & Ship Supply Company, 2128 Strand Street.

"Galveston, Texas, April 18, 1923.

"Purchase Order No. 141.

"Keystone Driller Co., Joplin, Missouri.— Please enter our order for the following material, and ship to us at San Juan, Tex.: [Then follows description of the items ordered.] Yours truly, Gulf Machinery & Ship Supply Company, H. J. Wilson, Manager."

The witness, testifying further, said that one copy of the order was sent to the Keystone Driller Company and one to the Gulf Machinery & Ship Supply Company; that the items ordered were shipped to appellants at San Juan; that Wilson wrote appellee in regard to the foundation, and at one time sent in an order for an extra pulley for the pump and asked when he could expect the material to arrive at San Juan; that the receipt of a copy of the order for the pump was acknowledged by appellants; that the first time he learned that appellants were complaining that the machinery had been shipped on open bill of lading was after appellee had notified them that it had not been paid for, which was several months after the same had been shipped and after it had been installed in operation; that the first acquaintance he had with Wilson was when Wilson ordered machinery for a job at Edinburg, which was prior to the San Juan order; that in a letter Wilson asked witness to give him prices on pumps, and in response to this letter witness went to Edinburg and met Wilson; Wilson was bidding on a waterworks job at Edinburg; that on first meeting, Wilson asked him if appellee would give them the agency for that territory and the territory around Galveston; that he sold the Edinburg pump through the Gulf Machinery & Ship Supply Company, and that company paid for it.

Testifying further, the witness said:

"When I first got acquainted with Mr. Boyd and Mr. Abrahams, they said Wilson was the sales manager for the Gulf Machinery & Ship Supply Company, and his correspondence with me showed that he was working for the Gulf Machinery & Ship Supply Company, but they didn't tell me that they distrusted him. Where I got most of my information what Wilson was was through Cunningham. Cunningham was not out of the firm at the time; not until after this agency contract was made. Yes; I knew he was out of the firm before this order was placed. Mr. Wilson told me that."

He also testified that prior to the time the San Juan order was shipped appellants never told him not to ship any machinery or fill

any orders unless they, or one of them, sent in the order or approved it, or that they did not want anything shipped to the valley, either to Cunningham or Wilson.

It was shown that Wilson got the machinery shipped to San Juan; that he installed it and received payment therefor, but refused to pay it over to appellee or appellants until appellants should come to some settlement of the controversy between him and them.

W. P. Cunningham, formerly a member of appellants' firm and its manager, testified that he became acquainted with Brady, the agent of appellee, in October, 1921; that the next time he saw Brady was after the San Juan contract had been awarded to his firm; and that at that time he told Brady that his firm proposed to handle the shipment of machinery from appellee on a C. O. D. proposition only; that his firm had a peculiar contract "down there," and the only way they could get their money would be on that basis; that he told Brady before they took the San Juan job that they had been disappointed in Wilson and were skeptical; that he told Brady his firm wanted any shipment made to the valley to be sight draft, bill of lading attached; that his reason for such instructions were that he distrusted Wilson. He testified that Wilson had no authority to take orders for merchandise without approval of the members of his firm.

Sam Boyd testified that he told Brady that Wilson was selling machinery for his firm, and told him that any machinery ordered must be shipped C. O. D. sight draft, bill of lading attached.

Brady denied that either Cunningham or Boyd had told him that they wanted shipments made C. O. D., etc., because they mistrusted Wilson or that they might lose their money if not so shipped.

Under the facts shown, we think the court could have reasonably found that Brady was not told of the mistrust of appellants in Wilson, if any such existed, and that Wilson was the agent of appellants with authority to receive the machinery without first making payment therefor; and that as such agent, he did receive the same and use it in the carrying out of appellants' contract with the city of San Juan. Such findings, which we are permitted to presume were made, would support the judgment rendered.

[7] By the contract entered into between appellants and appellee, appellee agreed to allow appellants a discount of 20 per cent. off of the list price of No. 33 pump heads. Appellants contend that they were entitled to an allowance of 20 per cent. off of the sum of $2,308, the amount sued for as the price of the pump head which was shipped by appellee to them, and that the court erred in not allowing them a recovery therefor.

Appellants' contention is not without evidence to support it. There was evidence, however, which would support a finding that the $2,308 sued for was the net price of the pump head; that it is the price therefor after 20 per cent. had been deducted from the list price, thus presenting a conflict of evidence on the issue. There being such conflict, it was the province of the trial judge to determine such issue, and, since he found the issue contrary to the contention of appellants, we are not at liberty to interfere with such finding.

Having reached the conclusions above expressed, we affirm the judgment.

Affirmed.