BOLYARD et al. v. TORONTO PIPE LINE CO. et al.

No. 5301.

Court of Civil Appeals of Texas. Texarkana.

Oct. 20, 1938.

Rehearing Denied Nov. 10, 1938.

Tom L. Beauchamp, of Tyler, and J. H. Heinen, of Jennings, La., for appellants.

Don L. Wakeman, of Overton, Smith & West, of Henderson, Carl W. Wade, of Dallas, and Weeks, Hankerson & Potter, of Tyler, for appellees.

HALL, Justice.

Appellants instituted this suit in the District Court of Rusk County against appellees for the value of ½ of ⅛ of the oil run from an oil well located on a 4-acre tract of land, a part of the Womack Survey in Rusk County, owned by J. H. Stewart and wife. It was alleged that appellants together owned ½ of the ⅛ royalty on said tract of land and that J. C. Prine, the owner of the leasehold interest in same, had drilled an oil well thereon and had produced therefrom large quantities of oil and for which appellants had not been paid their royalty interest. Appellants alleged their damages to be over $1,000. They also sought a cancellation of the oil and gas lease to J. C. Prine for the reason "that he had broken his contract and obligation to faithfully operate said lease and thereby has, having violated all its terms and obligations, cancelled said lease and forfeited all rights of operating the same."

Appellee Toronto Pipe Line Company answered by tendering into court the amount claimed by it to be owing for ½ of ⅛ royalty of the oil it received from the well on the land in controversy. Appellees T. H. and W. B. Coats answered by general demurrer, numerous special exceptions and specially denied that the well in controversy was located on land in which appellants owned a mineral interest, but alleged that said well was on land in another and different survey, namely, the Thompson Survey; that appellant De Guerin received his mineral conveyance in said land from the fee owner, Stewart, after appellees had purchased their mineral interest therein with full knowledge of said former purchase. Appellees also pleaded estoppel.

Trial was to the court without a jury, and resulted in judgment for appellees. The record discloses that no findings of fact and conclusions of law were filed by the trial court and none were requested, so, if the judgment of the court below can be affirmed on any theory, it is our duty to do so. Texas Creosoting Co. v. Hartburg Lumber Co., Tex.Com.App., 12 S.W.2d 169; Adcock v. Shell, Tex.Civ. App., 273 S.W. 900, writ refused; Boyd v. Keystone Driller Co., Tex.Civ.App., 6 S.W.2d 221; Johnson v. Campbell, Tex. Civ.App., 107 S.W.2d 1111.

The record reveals that appellants purchased from J. H. Stewart and wife ½ of ⅛ royalty in the following described tract of land which will be hereinafter referred to as the 27-acre tract:

"Being a part of the John Womack Survey, beginning 291 vrs East of the SWC of said Womack Survey;

"Thence 324½ varas N 30½ degrees East to center of the New Overton to Pitners highway;

"Thence Northeasterly 827½ vrs with said highway to center of crossing of Overton-Pirtle Highway and Overton-Pitners highway;

"Thence South by West about 32½ degrees, 719 vrs with old Overton-Pirtle road to stake,

"Thence West 429½ vrs to place of beginning, containing 27.50 acres of land, or more."

The mineral deed from J. H. Stewart and wife to T. H. and W. B. Coats describes the 4-acre tract, upon which it is alleged the J. C. Prine oil well is located as follows, and which will be hereinafter referred to as the 4-acre tract:

"Being a part of the John Womack Survey, out of the SWC of the H. Stewart 34.1 acre tract;

"Beginning at a point on the NBL of P. C. Warren 12.25 acre tract; and the SWC of the said J. H. Stewart tract, and the S.E.C. of the P. C. Warren 5-acre tract;

"Thence N 32-08 E. 311.9 feet;

"Thence N 28-02 E. 122 feet to a stake for corner;

"Thence E. 468.7 feet to a stake for corner;

"Thence S. 32-08 W. 436 feet to a stake for corner in the NBL of the R E L Silvey 8 acre tract;

"Thence S 87-32 W 269.9 feet, and

"Thence N 89-59 W 195 feet to the place of beginning, containing 4 acres of land."

This tract lies immediately South of the 27-acre tract. It is claimed by appellants

that the description of the 27-acre tract covers and includes the 4-acre tract, or the part at least upon which the Prine oil well is located, and fixes the ownership of ½ of the ⅛ of the royalty oil in them. Likewise it is contended by appellees that the part of the 4-acre tract upon which the J. C. Prine oil well is located is not within the field note description of the 27-acre tract. It is quite generally conceded by the parties to this cause that both of these tracts of land are in the J. H. Stewart enclosure and that the fee simple title to them is in him. It is clearly deducible from the record that the field note description of the 27-acre tract does not include all the land Stewart has within his enclosure. His title to some portion of the South part of the enclosure is derived by limitation. It is also apparent from this record that all the land in the Stewart enclosure is not on the Womack Survey, but that some portion thereof on the South is in the Thompson Survey which adjoins the Womack on the South. The description of the Womack Survey as shown in the patent is: "In Rusk County, about 13 miles N.W. from Henderson, by virtue of Coonditional certificate No. 101, issued by the Board of Land Commissioners of Montgomery County, on the 1st day of January, 1844, upon which unconditioned certificate No. 432 was issued by the same Board on the 1st day of June 1846. Beginning at the N.W. corner of John Smyth's survey, from which a water oak brs N 60½ W 12 vs. and a sweet gum bears S 11° E 8-6/10 vs. Thence East 300 vs to the S.W. corner of J. Ellington's survey from which a hickory brs S 25° W 8-4/10 vs; Thence N 1230 vs to the SE corner of Wm. Killen's Survey; Thence West 1900 vs to S.W. Corner of the same, 2184 vs to a post from which a post oak brs S 4° W 4 vs; another brs N 63° E 9 vs. Thence S 1744 vs a post from which a hickory brs S 78° E 4 vs, another brs S 75° W 7 varas. Thence East 1844 vs to NE corner of S. McCarty's survey. Thence North 544 vs to the place of beginning— bearings marked $\overline{X}$ —" None of the original bearing trees or markers called for in the patent can now be found. The South line of the 27-acre tract for its full length is coincident with the South line of the Womack, its beginning corner being 291 varas East of the Southwest corner of the Womack and the full length thereof is 429½ varas.

■■ In our opinion, a proper solution of this cause depends upon the location on the ground of the South boundary line of the Womack survey, and the development of this fact depended to a large extent upon the testimony of the two surveyor witnesses, one for appellants and one for appellees. The testimony of these two witnesses coincided with respect to the beginning corner, the Northeast, and the Northwest corners of the Womack Survey, but differed materially as to the proper location of the Southwest corner thereof. The surveyor Eby, for the appellees, testified he ran the West line of the Womack Survey from its recognized Northwest corner the call distance 1744 varas South and established the Southwest corner of the survey at that point; that there was no object at or near this point called for in the patent by which he could locate the Southwest corner of said survey and he had to rely on course and distance. If the South line of the Womack Survey be projected from the Southwest corner of the survey as located by this witness, the J. C. Prine oil well will lie South of said line and within the boundaries of the 4-acre tract.

The surveyor witness White, for appellants, testified that he located the Southwest corner of the Womack by tracing its South line from the East along an old hedge or fence-row which extended from a distance West of the Southwest corner of said survey. This witness also testified that this hedge-row was the South boundary line of the Stewart enclosure and was on the Thompson survey, that this hedge or fence-row began encroaching on the Thompson survey, "almost exactly on the old Overton-Pirtle road," at a distance from the Southwest corner of the Womack of 1158 feet, and continues this encroachment by 2° 3' until at its West end it is 68 feet in width. This witness testified further that he traced an old line East and West through the Womack survey about 552 varas North of its South line which was considered by him in locating the Southwest corner of the Womack Survey; that he had never at one time run the West line of the Womack, but testified that a line projected East from a point 1744 varas South from the accepted Northwest corner of the Womack would be about 100 feet South of the Prine oil well, thereby placing said well within the 27-acre tract. Thus it will be seen that the testimony of these

two witnesses presented to the court below a clear-cut issue of fact as to the location of the Southwest corner of the Womack and the South boundary line thereof. The effect of the judgment of the trial court was to fix the South line of the Womack Survey agreeably to the testimony of the witness Eby and to locate the Prine oil well South of that line and within the 4-acre tract and adjudge the same to be the property of appellees. This issue was passed on by the trial court, and under the facts of this case we would not be justified in disturbing his findings.

"In a nonjury trial the judge is the trier of facts and it is his duty to decide the issues of fact on the evidence. He weighs the evidence as a whole, giving it such probative force as in his opinion it is entitled to, harmonizing as far as possible conflicting testimony, and crediting or disbelieving witnesses as their testimony merits." 41 T.J. p. 1248, Sec. 378.

Appellants assign as error the action of the court below in overruling their motion to reopen this cause for further testimony and for a new trial based upon newly-discovered evidence. After the court below had entered judgment for appellees, appellants made a motion to reopen the case for further testimony and for new trial, setting up newly-discovered evidence. A full hearing on these matters was had in the trial court and both motions were overruled. We have carefully examined the evidence on these motions and in our opinion the trial court committed no error in overruling same. A trial judge has a wide discretion in matters of this nature and it is right that he should. As said in 31 Tex.Jur. p. 91, Sec. 82: "Nothing is better settled in the law of new trials than the rule that the grant or refusal of a new trial for newly discovered evidence rests within the sound discretion of the trial court, and that unless such discretion has been abused the court's ruling will not be disturbed on appeal." Gulf, C. & S. F. Ry. Co. v. Blanchard, 96 Tex. 616, 75 S.W. 6; Gulf, C. & S. F. Ry. Co. v. Reagan, Tex.Civ.App., 34 S.W. 796, writ refused; Bond v. International & G. N. Ry. Co., 55 Tex.Civ.App. 119, 118 S.W. 867, writ refused; Cannon v. Producers' Oil Co., Tex.Civ.App., 138 S.W. 803; Robbins v. Bell, Tex.Civ.App., 195 S.W. 865; Schaff v. Sanders, Tex.Civ.App., 257 S.W. 670, affirmed Tex.Com.App., 269 S.W. 1034. In our opinion, this same rule would apply with equal force to a motion to reopen a case for further testimony.

Finding no error in the record, the judgment of the court below is in all things affirmed.